# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Augusta Division

FILED
Lucinda B. Rauback, Acting Clerk
United States Bankruptcy Court
Savannah, Georgia
By lbarnard at 5:14 pm, Jul 17, 2012

In the matter of: )
) Chapter 7 Case
)
SPORTSMAN'S LINK, INC. )
) Number 07-10454
)
*Debtor* )

## OPINION AND ORDER
## ON MOTION TO IMPOSE SANCTIONS FOR
## VIOLATION OF BANKRUPTCY RULE 2014

This matter comes before the Court on the United States Trustee's Motion to Impose Sanction for Violation of Bankruptcy Rule 2014 by Klosinski Overstreet, LLP. Dckt. No. 808.

### FINDINGS OF FACT

Debtor, Sportsman's Link, Inc., filed Chapter 11 bankruptcy, on March 13, 2007. Dckt. No. 1. The case was converted to Chapter 7 on July 22, 2008. Dckt. No. 357. Attorney, Scott J. Klosinski and his firm, Klosinski Overstreet, LLP ("KO"), represented Debtor, as Debtor-in-Possession, in Chapter 11 bankruptcy. Dckt. No. 22. Upon conversion to Chapter 7, Edward J. Coleman was appointed Chapter 7 Trustee ("Trustee"). Dckt. No. 358. He hired KO and its partners, Klosinski and James C. Overstreet, Jr., as special counsel to pursue preference and fraudulent transfer actions for Debtor's estate. Dckt. No. 507. Klosinski commenced twenty-three adversary proceedings and recovered $514,400.27 in funds for Debtor's estate. Dckt. No. 791, 5. KO requested $101,612.50 for services

rendered in the Chapter 11 and $169,783.11 for the services provided as special counsel during the Chapter 7. Dckt. No. 506; Dckt. No. 622; Dckt. No. 657.

Klosinski and his wife own 1,599 shares of Southeastern Bank Financial Corporation and Mrs. Klosinski is the custodian of another 3,000 shares of Southeastern Bank Financial Corporation held in trust for their children. Dckt. No. 808-1, 2. Southeastern Bank Financial Corporation is the holding company that owns Georgia Bank and Trust Company of Augusta ("GB&T"). *Id.* Additionally, Klosinski's father-in-law is a current member of and former chairman of the Southeastern Bank Financial Corporation board of directors. *Id.* at 3. Klosinski's partner, Overstreet, previously served as general counsel to Fairway Ford and continued to perform local services for the company, before and after, but not during, KO's pursuit of the action against Fairway Ford. Dckt. No. 808-1, 4.

Sohail Abdulla, sole shareholder of Debtor, filed a malpractice action against Klosinski and KO, based in part on the failure to disclose relationships with two creditors, Fairway Ford and GB&T. The Chapter 7 Trustee, for whose benefit the action was brought, received an offer from the defendants to settle the case and obtained court approval, over Abdulla's objection, to accept the settlement. Dckt. No. 773. That Order reserved the issue now before the Court and required the United States Trustee to submit a report and recommendation to the Court regarding these relationships. The United States Trustee filed his Report and Recommendation February 25, 2012, Dckt. No. 800, and filed a Motion to Impose Sanction for Violation of Bankruptcy Rule 2014, March 9, 2012, with an Amended

Report and Recommendation attached. Dckt. No. 808.

The United States Trustee conducted an inquiry and concluded that KO is disinterested and, therefore, a complete disallowance of fees is not sought. Dckt. No. 808. No party in interest filed any objection to that recommendation, nor was any adverse interest represented at the hearing on May 18, 2012. The United States Trustee focused instead on inadequate disclosures of Counsel's relationship to parties in interest, which fail the applicable standards for disclosure and warrant a fee reduction.

The Court held a hearing on the Motion to Impose Sanction, May 18, 2012. The Parties stipulated to and the Court took judicial notice of all the documents already on the record. The facts are not in dispute.

- March 13, 2007 — Debtor files Chapter 11 bankruptcy, Dckt. No. 1; Application to Employ KO, Dckt. No. 17.
- April 4, 2007 — GB&T files Proofs of Claims # 11, 12, 13, and 14. *See* Claims Register.
- July 11, 2007 — Representative of GB&T and Klosinski attend Meeting of Creditors, Dckt. No. 120.
- October 9, 2007 — Chapter 11 Plan filed, lists

GB&T's claims and expresses Debtor's intent to object, Dckt No. 176; Disclosure Statement filed, lists GB&T with 3 contingent debts, Dckt. No. 177.

- June 18, 2008 — GB&T files Motion for Relief from Stay, Dckt. No. 336.

- July 22, 2008 — Case converted to Chapter 7, Dckt. No. 357; Edward J. Coleman appointed Chapter 7 Trustee; GB&T's Motion for Relief from Stay granted, Dckt. No. 356.

- February 13, 2009 — Chapter 7 Trustee files Application to Employ KO as special counsel, Dckt. No. 501.

- February 26, 2009 — Application to Employ KO as special counsel granted, Dckt. No. 507.

- August 17, 2009 — Adversary proceeding against GB&T initiated by Klosinski, Dckt. No. 536; A.P. No. 09-1065, Dckt. No. 1.

## CONCLUSIONS OF LAW

The issue presented is whether Counsel's fees should be disallowed or reduced as a result of inadequate disclosure of Counsel's relationship to parties in interest in the case. This determination is vested in the sound discretion of the bankruptcy court.

Miller Buckfire & Co. v. Citation Corp. (In re Citation Corp.), 493 F.3d 1313, 1317-18, 22 (11th Cir. 2007) (fee determinations are reviewed under an abuse of discretion standard). It is well-settled that counsel who "hold or represent an interest adverse to the estate" and that are not "disinterested" cannot serve as counsel to a Chapter 11 debtor. 11 U.S.C. § 327(a). Nor can counsel who hold an interest adverse to the debtor or the estate act as special counsel to the debtor on a matter related to that interest. 11 U.S.C. § 327(e).

Respondents are experienced, able, and highly regarded attorneys who, in the final analysis, performed diligently in this case and achieved overall positive results for Debtor's estate. The Chapter 11 failed and the case was converted to Chapter 7, but the failure occurred because Debtor was not profitable, not because of Counsel's work. During the Chapter 7 phase, Counsel recovered approximately $514,000.00 in litigation; as a result of that and Trustee's effective work, the estate is solvent and some dividend to unsecured creditors is anticipated. The United States Trustee does not suggest reducing fees based on a "results obtained" standard, but focuses instead on Counsel's failure to disclose certain connections required under Bankruptcy Rule 2014. 11 U.S.C. § 330(a)(3); Speights & Runyan v. Celotex Corp. (In re Celotex Corp.), 227 F.3d 1336, 1341 (11th Cir. 2000).

Federal Rule of Bankruptcy Procedure 2014 requires that every application for an order of employment of a professional under section 327 "be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants,

the United States trustee, or any person employed in the office of the United States trustee." FED. R. BANKR. P. 2014(a). KO failed to meet this mandate in the application for employment filed in both the Chapter 11 phase and the Chapter 7 phase of the case. In the Chapter 11 application, KO filed a 2014 Verified Statement but omitted any mention of Klosinski's relationship with GB&T; for the Chapter 7 phase, KO did not file a second 2014 Verified Statement with Trustee's application, leaving the record of that relationship unchanged, and thus inadequate.

A. Chapter 11 Fees

Scott Klosinski and members of his immediate family own stock in Southeastern Bank Financial Corporation, the holding company that owns GB&T. Dckt. No. 800, 2. GB&T was a creditor of Debtor because Debtor guaranteed a debt of Why Pay More, LLC to GB&T. Dckt. No. 808-2, 6. Klosinski's father-in-law is the former board chairman and a current board member of Southeastern Bank Financial Corporation. Dckt. No. 808-1, 3. However, in Debtor's Application to Employ KO, Klosinski recited that "[n]either Klosinski Overstreet, LLP nor any member of its staff "has any connection with the creditors of the debtor, or any other party in interest . . . ." Dckt. No. 17, para. 8. In the 2014 Verified Statement filed in support of that application, Klosinski stated that KO and he had the "stated connection to the parties listed below . . . Creditors: None." Dckt. No. 18, para. 2. Both of these statements are patently wrong. In response to the United States Trustee's inquiry as to why this relationship was omitted, Klosinski responded that KO did not believe "the connection to be relevant or material." Dckt. No. 808-2, 6.

This is not the standard. Rule 2014 requires disclosure of all "the person's connections with . . . creditors [and] any other party in interest." *See* Miller Buckfire, 493 F.3d at 1321 ("the professional must disclose all of its previous contacts with any party in interest"). There is no relevance or materiality qualifier to the requirement; that analysis is for the Court to make, after the connections are revealed to all parties in interest, which did not occur here. *Id.* ("The bankruptcy court, not the professionals, must determine which prior connections rise to the level of an actual conflict or pose the threat of a potential conflict.").

At the May 18 hearing, it was intimated that due to the familiarity of the major participants in the case with the individuals and relationships in question, and the tight-knit nature of bankruptcy practitioners in this Court, no harm occurred as a result of this non-disclosure. However, any proffered "small community" defense to non-disclosure is completely misdirected. "A lack of candidness in 'disclosing [] potential problem[s] for independent court review before appointment . . . in itself, presents an appearance of impropriety.'" In re MF Global Inc., 464 B.R. 594, 602 (Bankr. S.D.N.Y. 2011) (*quoting* Intercont'l Enter., Inc. v. Keller (In re Blinder, Robinson & Co.), 131 B.R. 872, 881 (D. Colo. 1991). One of the driving forces underlying bankruptcy reform in the 1970's was the need for greater transparency and dismantling of the "bankruptcy ring" of perceived insiders among bankruptcy specialists and the courts. The Bankruptcy Reform Act of 1978 attempted to address the damaging perceptions that "the Bankruptcy system operates more for the benefit of attorneys than for the benefit of creditors" and that "there is a 'bankruptcy ring' that has an inside track on all bankruptcy matters." H. Rep. No. 595, 95th Cong., 2d Sess.

92; *accord* in re CF Holding Corp., 164 B.R. 799, 804 (Bankr. D. Conn. 1994) (the Bankruptcy Reform Act of 1978 was passed "in part to maintain and promote public confidence in the integrity of the bankruptcy system" and the "provisions requiring that all professionals whose employment is dependent upon court approval comply with high fiduciary standards, represents the considered judgment of Congress"); *see also* Pierson & Gaylen v. Creel & Atwood (In re Consol. Bancshares, Inc.), 785 F.2d 1249, n. 6 (5th Cir. 1986) ("The standards for the employment of professionals are strict, for Congress has determined that strict standards are necessary in light of the unique nature of the bankruptcy process.").

I concur with the United States Trustee that the disclosure provided in connection with the Chapter 11 representation was woefully inadequate. The United States Trustee suggests that a fee reduction of 15% ($15,241.88) is appropriate for the Chapter 11 phase of the case. Dckt. No. 808-1,7. In reaching this number, the United States Trustee relies heavily on in re Matco Electronics Group, Inc., 383 B.R. 848 (Bankr. N.D.N.Y. 2008), in which the bankruptcy court for the Northern District of New York imposed a 15% reduction in fees[1] and a 10% reduction in expenses based on counsel's failure to comply with the disclosure requirements under Rule 2014. The court found that counsel for the creditors' committee was purposefully vague in the disclosure of the relationship between his firm and one of the creditors in order to avoid further inquiry. It held that disclosure was mandatory,

---

[1] In fact, the reduction was larger in that it applied only to the fees under review, but the court also disallowed all future unspecified fees.

not subject to the applicant's view of materiality and that disclosure had to be full and complete, not a game of "cat and mouse," with attorneys providing just enough information to appear to meet the Rule. *Id.* at 853-54.

While Matco is informative, each Court has an independent duty to fashion the appropriate remedy on a case-by-case basis. A multitude of cases decided by courts reduce fees across the full range between 0 and 100%. There is no simple test to apply, but one compelling formulation suggests five factors to consider in determining the fee reduction. It focuses on (1) "[w]hether the connections at issue would have created a disqualifying interest under section 327(a);" (2) whether the failure to disclose was inadvertent or intentional;" (3) "the materiality of the information omitted;" (4) counsel's efforts to correct the deficiency;" and (5) "the benefits provided to the estate by counsel." Waldron v. Adams and Reese, LLP, (In re Am. Int'l Refinery, Inc.), 436 B.R. 364, 380 (Bankr. W.D. La. 2010) (Court reduced counsel's fees by 20% finding counsel did not have a disqualifying interest and the failure to disclose was not intentional; however, the failure to disclose its pre-bankruptcy relationship with debtor and a creditor, and the fact that a creditor paid counsel's retainer, was exacerbated by counsel's delay in curing the omission until after an adversary proceeding was filed against them.).

I would not, in every case, limit the relevant factors to these, but I believe they provide useful points to consider in determining whether and by what amount to reduce KO's Chapter 11 fees:

(1) It is impossible to know with certainty that KO would have been allowed to represent Debtor, if all these connections had been revealed. The United States Trustee believes the representation would have been permitted and on balance I agree.[2] However, KO usurped the bankruptcy court's power and responsibility to "determine which prior connections rise to the level of an actual conflict or pose the threat of a conflict of interest" on a timely basis. Miller Buckfire, 493 F.3d at 1321.

(2) KO's failure to disclose was purposeful, even if it was not done with malicious intent. Even now counsel does not suggest this occurred as a result of mistake or oversight. Instead by responding to the United States Trustee's inquiry that the information was immaterial, KO appears to concede this point.

(3) The omitted information was "material" in that it was mandatory. Whatever the Court might have done after a full hearing does not excuse the fact that the Court, and all parties in interest were entitled to know what was concealed.

(4) Counsel made no effort to correct the omission for almost five years, from the filing of the 2014 Verified Statement, March 13, 2007, until its response to the United States Trustee's inquiry of the issue, February 21, 2012. Dckt. No. 808-2.

(5) Counsel's efforts were beneficial to the estate. It provided time for Debtor to attempt to assume a leasehold interest, against vigorous opposition by the landlord, which was essential to its possibility of reorganization as a retail business. As a

---

[2] I have concluded, infra p. 13, that KO would not have been appointed special counsel in the Chapter 7 phase of the case for litigation involving GB&T, had it properly revealed its connections. Thus, the disclosure failure that originated during the Chapter 11 employment process also contributed to the lack of disclosure to the Court at the Chapter 7 phase and compounded Counsel's error. That error results in a partial fee disallowance, see infra p. 19, and constitutes an additional factor for fee reduction here.

result of Counsel's work, Debtor remained in possession of its retail location for eighteen months and failed not because it lost its lease, but because it was losing money.

I am persuaded by <u>Matco</u> that complete disallowance of fees is not warranted by the conduct involved, but the circumstances outlined above call for a more serious response than the amount suggested by the United States Trustee. Therefore, KO's Chapter 11 fees are reduced by $20,000.00.

The Chapter 11 fee request, excluding expenses, totals $101,612.50. Thus, the Chapter 11 fees are allowed in the net amount of $81,612.50.

B. Chapter 7 Fees

*1. The GB&T Case*

Upon conversion to Chapter 7, Edward J. Coleman was appointed Chapter 7 Trustee. He sought approval of KO as special counsel to pursue litigation for estate causes of action such as preferences or fraudulent conveyances. In connection with that appointment under section 327(e), Klosinski failed to file a second 2014 Verified Statement. He did file an affidavit stating that none of the attorneys of KO "hold or represent an interest adverse to the Debtor." <u>Affidavit of Scott J. Klosinski</u>, Dckt. No. 501, 5. At that point, he arguably "held" an interest adverse to the debtor by virtue of his stock ownership in a holding company of a creditor, which would render this statement incorrect. Regardless of that issue, Klosinski's affidavit completely omits the critical phrase "with respect to the matter on which

the attorney is to be employed." Omitting the phrase from his affidavit glossed over the specific claim on which KO's representation was most problematic. GB&T was a known target of Trustee's anticipated preference actions and the affidavit is obviously wrong. He unquestionably held an interest adverse to Debtor with respect to the GB&T case. Nevertheless, he became special counsel to Trustee and sued a company in which he held an indirect financial interest and a familial connection without ever revealing that fact to the Court. *See* Electro-wire Prods. Inc., v. Sirote & Permutt, P.C. (In re Prince), 40 F.3d 356, 361 (11th Cir. 1994) (defining holding an adverse interest as "possessing . . . either an economic interest that would tend to lessen the value of the bankruptcy estate or that would create an actual or potential dispute in which the estate is a rival claimant . . . or . . . a predisposition under the circumstances that render such a bias against the estate.").

Trustee hired KO on a contingent fee arrangement for its work as special counsel. KO recovered approximately $514,000.00 for the estate. It requested $169,783.11 in fees, excluding expenses, for its work as special counsel during the Chapter 7 phase of the case, $25,000.00 of which was remitted to Trustee, based on his proportional participation as an attorney in the adversary proceedings. The net fee KO seeks is therefore $144,783.11. The United States Trustee now recommends a reduction of 8.7% ($12,589.84) of the net Chapter 7 fees sought by KO because he believes its failure to disclose was relevant in only two of the twenty-three adversary proceedings that were prosecuted. Dckt. No. 808-1,8.

Contingent fee arrangements, such as the one employed here, are time

honored, and necessary to provide meaningful access to the courts for those, often people of limited means, who cannot afford to pay an attorney on an hourly basis. That factor is also a common consideration for bankruptcy trustees who seek to maximize the size of an estate without incurring high attorney fee expenses unless there is a meaningful recovery; still, the allowance of bankruptcy fees is grounded in statute. It empowers trustees to hire professionals "on any reasonable terms and conditions," including on a fixed percentage basis, but grants the court final authority to allow compensation on terms different from the contract if those terms prove to have been "improvident" in light of circumstances not anticipated at the time of employment. 11 U.S.C. § 328.

Here, although the Court approved the selection of KO on a fixed percentage fee, I find that approval would have excluded the GB&T case, had the prior relationship been fully disclosed in a timely manner. In light of these circumstances, I conclude that a fixed percentage fee agreement covering all the cases is now revealed to be "improvident," when Counsel was not qualified to serve in all those cases.

In light of my independent duty to determine fees, I accept the United States Trustee's recommendation in part, finding that a reduction is necessary; however, based on the abject failure to meet the high standards of disclosure required of counsel, I hold that a larger reduction is required. There was no monetary recovery from the adversary proceeding against GB&T, thus the Court cannot simply withhold a portion of the fees earned. Instead, an alternate method for determining an appropriate reduction must be used. Neither the

absence of any recovery nor the risk-pooling concept which supports contingent fee agreements protect counsel from a fee reduction when it fails in its duty to meet the statutorily mandated disclosure

The United States Trustee made a considered and sound recommendation for allocating Counsel's time between cases it was properly hired to pursue and those in which it was not. His method utilized the absolute number of cases in each category to make its recommendation. However, the analysis of fee allowance should be more than a formulaic exercise. Rather than the proration of fees based solely on the relative number of adversaries, the magnitude of those cases may be a better way of allocating Counsel's allowable time. Here, the five Consolidated Actions,[3] of which the GB&T case was one, were the most heavily contested and time consuming of all the adversary proceedings. The sum sued for in the Consolidated Actions, $579,954.62, is approximately one-third of the amount sued for against all twenty-three defendants, $1,846,758.98. If the magnitude or difficulty of litigation is directly related to the amount in controversy in the Consolidated Actions, in which GB&T was a defendant, then a reduction of one-third might be appropriate.

A middle approach, and the one I adopt, is to examine the percentage fee request under a section 330 lens. In setting fees generally, section 330 authorizes the court

---

[3] The Consolidated Actions were: Coleman v. Am. Concrete, Inc., A.P. No. 09-1048; Coleman v. S. Bank, A.P. No. 09-1058; Coleman v. First Bank, A.P. No. 09-1059; Coleman v. Ga. Bank & Trust Co., A.P. No. 09-1065; Coleman v. Alexander Motors, Inc., A.P. No. 09-1070.

to award a professional "(A) reasonable compensation for actual, necessary services . . . and (B) reimbursement for actual, necessary expenses." 11 U.S.C. 330(a)(1). I realize that "[a]n attorney operating on a contingency-fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not." City of Burlington v. Dague, 505 U.S. 557, 564 (1992). Because of the risk pooling concept underlying contingent fee arrangements, the effective hourly rate may properly be higher in a contingent fee case than in one where counsel is paid hourly. The case before me raises the question of the proper relationship between an hourly rate and a contractual percentage fee, which can be reduced by the court if the terms of employment prove to be "improvident."

I hold that sections 328 and 330 do not permit any fee, including contingent fees, to be approved without a holistic evaluation of the reasonableness of the amount. While ideally the size of a contingent fee award will yield a higher hourly rate than a fee for similar work that was not contingent on the outcome, the percentage fee must be viewed as a cap, not an entitlement. The United States Supreme Court has considered, in a different context, the appropriate interaction between percentage fee agreements and awards grounded on a "reasonableness" analysis in Gisbrecht v. Barnhart, 535 U.S. 789 (2002). Attorneys for Social Security claimants are by statute permitted to receive "a reasonable fee . . . not in excess of 25 percent . . . ." The dispute was whether this language limits the fee to what is reasonable under a lodestar approach or honors the attorney-client fee agreement so long as it does not exceed 25%.

Barnhart instructs courts to look to the contingent fee agreement as the baseline and then test it for reasonableness. *Id.* at 808. In doing so, the Court reversed a lower court which had utilized a pure "lodestar" approach to fee allowance, declined to enforce the contingent fee agreement, which was capped at the statutory maximum of 25%, and awarded a smaller fee. The Supreme Court held that

> Congress, we conclude, designed § 406(b) to control, not to displace, fee agreements between Social Security benefits claimants and their counsel. Because the decision before us for review rests on lodestar calculations and rejects the primacy of lawful attorney-client fee agreements, we reverse the judgment below and remand for recalculation of counsel fees payable from the claimants' past-due benefits.

*Id.* at 793.

It thus adopted the contingent fee as the presumptive fee, but recognized the importance of subjecting that presumptive fee to a reasonableness review. Examples it cited as reasons for reduction were substandard representation, delays by counsel, or windfall awards. *Id.* at 808.

The Barnhart Court reviewed multiple areas in which contingent fees are the accepted norm, and I conclude by logical extension that this holding should apply in all contexts, not just Social Security cases. *Id.* at 803-05. Therefore, the rationale of Barnhart is controlling in bankruptcy cases, and the 33% contingent fee sought by KO is presumptively reasonable. Step two, under Barnhart, the reasonableness review, is governed

by sections 328 and 330. Subsection 330(a)(3) enumerates factors for the court to consider in determining whether the fee is reasonable, which closely parallel the lodestar rule in the Eleventh Circuit. *See* Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292 (11th Cir. 1988). The lodestar equals the customary hourly fee charged for similar services by counsel of similar experience, ability, and reputation multiplied by the number of hours reasonably spent on the matter. *Id.* at 1299-1301. To the extent that billed hours are reduced, the resulting lodestar fee is also reduced. Once the lodestar is established the court will adjust the amount up or down based on the results obtained, either because they were exceptional or because they were of partial or limited success. *Id.* at 1302. However, enhancements are rare, as the factors which might lead to enhancement are presumed to be accounted for in setting the appropriate hourly rate.[4]

Although the Trustee engaged KO on a contingent fee basis, KO provided time records, as it should,[5] which were attached to the Report and Recommendation of the

---

[4] In re First Am. Health Care of Ga., Inc., Case No. 96-20188, 15-24 (Bankr. S.D. Ga. Aug. 4, 1997) (Davis, J.) (Court held enhancement of counsel's fee was not appropriate because there were no unique or unforeseen circumstances, nor results which far exceeded reasonable expectations, and the paying party did not consent to the enhancement. While the case was prosecuted from filing to confirmation with nearly unprecedented speed, this did not exceed expectations that existed at the outset: The debtors' counsel believed the case was highly likely to succeed based on pre-petition negotiations and would proceed at a rapid pace. Moreover, the complexity and magnitude of the case was visible from the outset and was factored into the approved hourly rate. In light of that assessment, I held that there was no evidence to support a finding that the hourly fee did not fully compensate counsel's good work and excellent result.); Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 745-46; Norman, 836 F.2d at 1302.

[5] Even in contingent fee cases the burden is on the requesting attorney or firm to make sufficient demonstration of the time and effort expended and thus the reasonableness of the fee. Barnhart, 535 U.S. at 808 (2002); Norman, 836 F.2d at 1303; *see also* in re Concrete Prods., Inc., Case No. 88-20540, (Bankr. S.D. Ga. Feb. 7, 1992) (Davis, J.) (A court appointed trustee who seeks a fee based on a statutory percentage must be able to support the fee award based on time records if the fee is challenged. Court disallowed portion of fee request for trustee work when time records were not kept and could not be fully reconstructed. Fee request of the trustee for his time spent acting as attorney for the estate was fully supported by time records).

United States Trustee and the United States Trustee's Motion to Impose Sanction. Dckt. No. 800-2; Dckt. No. 808-3. Upon review, and without suggesting that this analysis is strictly a matter of mathematical computation, these records reveal that approximately 20% of KO's documented time was spent on the adversary against GB&T.[6] The Consolidated Actions resulted in no recovery because this Court ruled at trial that Trustee had not carried his burden of proving insolvency of Debtor, an essential element. <u>Coleman v. Am. Concrete, Inc. (In re Sportsman's Link, Inc.)</u>, 2011 WL 2632079 (Bankr. S.D. Ga. 2011) (Davis, J.). As a result, KO does not actually seek any fee based on recoveries arising out of the GB&T litigation. However, I find that for purposes of determining the reasonableness of the contractual percentage fee, the allowable lodestar fee to be used as a comparable must be reduced by the number of hours devoted to the GB&T case, which are not compensable. The adjusted reasonable lodestar fee resulting from this exercise is the number against which to test the presumptively reasonable contingent fee.

Because of the failure to provide full disclosure of the relationship between KO and GB&T, I find that under a lodestar analysis, all the time devoted to the GB&T case would be disallowed. A 20% reduction in the theoretical lodestar award results in a 20% greater differential between that fee and the percentage fee which was presumed reasonable under the assumption that all the hourly charges were allowable. I conclude that the percentage fee should be reduced by an amount which replicates that reduction.

---

[6] The Court identified all time entries that recorded activity appearing common to all defendants in the Consolidated Actions and prorated those hours. It then counted in full all hours that related specifically to GB&T. This evaluation was necessarily inexact, but provides a rough idea of the distribution of work between the cases.

The United States Trustee applied its suggested fee reduction to the net amount due KO, after it paid Coleman for his work on the adversary proceedings. Coleman was not responsible for the disclosure failures of KO and that fee is unaffected by this ruling. Therefore, the net figure utilized by the United States Trustee is correct, but for the reasons set forth above, I hold KO's Chapter 7 fee be reduced by $30,000.00, leaving a net fee for the Chapter 7 work of $114,783.11.

### 2. *The Fairway Ford Case*

KO's affidavit and 2014 Verified Statement also failed to disclose its prior relationship with Fairway Ford, a creditor. James Overstreet, Klosinski's partner, served as Fairway Ford's general counsel prior to its sale in late 2006. After the sale, Overstreet continued to represent Fairway Ford in local matters, except for a brief period during the pendency of the adversary proceeding against Fairway Ford. Dckt. No. 808-2, 1, Exh. A. The adversary proceeding against Fairway Ford, which resulted in a settlement of $10,000.00, sought to recover $89,943.65. Had KO disclosed its relationship with Fairway Ford as required, it would not have been allowed to serve as special counsel in the adversary proceeding against Fairway Ford. The Court was denied the opportunity to assess this connection before the services were rendered, and I hold the fee collected from that representation should be disallowed. KO settled, with Court approval, the adversary proceeding against Fairway Ford for $10,000 and requested a 33% fee according to its employment agreement. Dckt. No. 622, 2. KO's fee will be reduced by this additional

$3,300.00.

### 3. Other Fees

KO seeks fees of approximately $3,480.00 attributed to defending KO against First Bank and Southern Bank's Motions for an award of those Bank's attorney's fees incurred in their successful defense of the Consolidated Actions. KO's defense costs for that Motion are not appropriately recouped from the estate, thus KO's fee will be reduced by an additional $3,480.00. 11 U.S.C. § 330(a)(4) ("the court shall not allow compensation for . . . (ii) services that were not – (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case").

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED that KO's Chapter 11 fee be reduced by $20,000.00 and KO's Chapter 7, special counsel, fee be reduced by $36,780.00 for a total reduction of $56,780.00.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 17th day of July, 2012.